**AIMCOR, ALABAMA SILICON, INC., and American Alloys, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**CVG–Venezolana de Ferrosilicio, C.A., Defendant–Intervenor.**

Slip Op. No. 95–210.
Court No. 93–06–00322.

United States Court of
International Trade.

Dec. 29, 1995.

Baker & Botts, L.L.P. (William D. Kramer, Charles M. Darling, IV, and Estee S. Levine), Washington, DC, for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Cynthia B. Schultz), Rebecca Rejtman, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, Washington, DC, for defendant.

Morrison & Foerster, Washington, DC (Julie C. Mendoza, Craig A. Lewis, Sue–Lynn Koo and Donald B. Cameron), for defendant-intervenor.

### MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Plaintiffs, domestic manufacturers of ferrosilicon, move for judgment upon the agency

record pursuant to USCIT R. 56.2, contesting certain parts of the final redetermination on remand of the United States Department of Commerce. *See Final Results of Remand Determination Pursuant to Court Remand, Aimcor v. United States* No. 93–06–00322 (Mar. 30, 1995) [hereinafter *Remand Determination* ]. This court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1988).

### BACKGROUND

Plaintiffs filed a countervailing duty petition alleging, *inter alia,* that Defendant–Intervenor, CVG–VENEZOLANA de FERRO-SILICIO, C.A., (FESILVEN), received countervailable subsidies for ferrosilicon production and export into the United States. Specifically, Plaintiffs allege that the purchase of FESILVEN's newly issued class E stock by Venezuelan government-owned entities (GOV) amounted to the "provision of capital ... on terms inconsistent with commercial considerations" pursuant to 19 U.S.C. § 1677(5)(A)(ii)(I) (1988). In its *Final Affirmative Countervailing Duty Determination: Ferrosilicon From Venezuela; and Countervailing Duty Order for Certain Ferrosilicon From Venezuela,* 58 Fed.Reg. 27,539, *as amended,* 58 Fed.Reg. 36,394 (Dep't Comm. 1993), Commerce determined that GOV's purchase of class E shares was consistent with commercial considerations, and thus was not countervailable. 58 Fed.Reg. at 27,542. Commerce based its finding on the grounds that (1) FESILVEN was equityworthy at the time the class E shares were purchased and (2) the class E shares were not worthless, because holders of class E shares possessed voting rights and were eligible for dividends. *Id.* The court found that the scope of the investigation was insufficient to enable Commerce to carry out its statutory mandate pursuant to 19 U.S.C. § 1677(5)(A)(ii)(I). *See Aimcor v. United States,* 18 CIT ——, ——, 871 F.Supp. 447, 454 (1994). The court was concerned that heavy restrictions on class E shareholders—limitations on the resale of class E shares to par value and the existing shareholders' right of purchase prior to sale of the class E shares—so severely restricted the expected return on class E shares that the purchase of those shares would be inconsistent with commercial considerations. *Id.* Commerce's initial finding regarding class E rights were based upon an insufficient record and therefore were subject to reexamination upon remand. *See Remand Determination* at 13. Accordingly, the court held that further consideration was required to determine whether the expected return on class E shares was adequate to avoid the imposition of a countervailing duty. *Id.* The issues presented in this action upon remand are (1) whether Commerce improperly declined to examine FESILVEN's financial condition in reviewing the restrictions imposed on class E shares and (2) whether the purchase of FESILVEN's class E shares in 1991 was consistent with commercial considerations, given various restrictions on those shares.

### DISCUSSION

After obtaining additional information from FESILVEN, Commerce determined that GOV's purchase of class E shares was consistent with commercial considerations. Commerce based its present determination on findings that (1) holders of class E stock faced no legal restrictions that limited the resale value of their class E shares to par value, (2) the evidence indicated that existing shareholders' right of first refusal on class E shares would not affect the expected return on class E shares, (3) FESILVEN's accumulated unpaid preferred dividends stood at less than $750,000 at the end of 1991, and (4) a private investor purchased class E shares on the same terms as government-owned entities. *Remand Determination* at 3–4.

Plaintiffs contest Commerce's remand determination, claiming, in essence, that (1) class E shareholders are not entitled to dividends or liquidation rights, (2) class E shares cannot be sold for more than par value, and (3) FESILVEN was experiencing financial difficulties in 1990 and 1991, allegedly reflected in deteriorating profitability, accumulating dividend burdens, and the low transaction price of certain preferred shares, shortly before class E common shares were issued. (*See* Pls.' Comments on Remand Det. at 3–4) [hereinafter Pls.' Remand Br.]

Once Commerce makes its final determination, the court's role is to uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

### 1. FESILVEN's Financial Condition

Plaintiffs claim that Commerce's remand analysis is fundamentally flawed and contrary to this court's remand order. Specifically, Plaintiffs assert Commerce failed to examine (1) the current and projected financial performance of FESILVEN, and (2) the interplay between FESILVEN's financial health and the rights of, and restrictions on, class E shares. (*See* Pls.' Reply to Responses of Def. and Def.-Int. to Pls.' Comments on the Remand Det. at 2–3, 5) [hereinafter Pls.' Reply Br.] Plaintiffs claim that consideration of FESILVEN's financial condition was mandated by this court because restrictions on class E shareholders significantly diminished whatever value the shares otherwise possessed, *see id.* at 5, requiring that FESILVEN demonstrate "stronger financial indicators than would have been necessary in the absence of such restrictions for the investment in the Class E shares to be consistent with commercial considerations," *id.* at 4.

The court disagrees with Plaintiffs' contention that Commerce failed to examine FESILVEN's financial condition. In its original investigation, Commerce determined FESILVEN was equityworthy when it issued class E shares. *Aimcor*, 18 CIT at ——, 871 F.Supp. at 454; *Remand Determination* at 1. FESILVEN's shares are not traded on a public stock exchange. *Remand Determination* at 9. When there is no market-determined price for corporate shares, Commerce considers a company to be equityworthy if "from the perspective of a reasonable private investor examining the firm at the time the government equity infusion was made, the firm showed an ability to generate a reasonable rate of return within a reasonable period of time." *Countervailing Duties*, 54 Fed. Reg. 23,366, 23,381 (Dep't Comm.1989). Stated differently, Commerce determines whether a company is equityworthy by assessing whether the government equity infusion in question is a reasonable investment from the perspective of a reasonable private investor. *See Companhia Siderurgica Paulista, S.A. v. United States*, 12 CIT 1098, 1101, 700 F.Supp. 38, 42 (1988). Plaintiffs acknowledge this definition of equityworthiness. (*See* Br. in Supp. of Pls.' Mot. for J. on the Agency R. at 33, 35 & n. 84) (citing *Companhia* and generally to the subsidies appendix of *Cold–Rolled Carbon Steel Flat–Rolled Products from Argentina*, 49 Fed. Reg. 18,006, 18,016, 18,020 (Dep't Comm. 1984)), which specifically notes Commerce "must determine the commercial soundness of government equity purchases by assessing the prospects of the company at the time those purchases were made. To be 'equityworthy,' a company must show ability to generate a reasonable rate of return within a reasonable period of time") [hereinafter Pls.' Initial Br.]. Plaintiffs concede Commerce's finding that FESILVEN was equityworthy was not previously at issue before the court, and is not properly before the court now. (*See* Pls.' Initial Br. at 36; Pls.' Reply Br. at 5, n. 9.)

In *Aimcor*, the court explained,

In analyzing the likelihood of a return based upon dividends, Commerce merely concluded that entitlement to the dividends exist[s]. This, standing alone, does not permit Commerce to determine whether 'the expected return [from the investment] is below that which would be required by a private investor.' The court finds it difficult to imagine how the purchase of stock burdened by . . . onerous resale conditions could be anything other than inconsistent with commercial considerations.

*Aimcor*, 18 CIT at ——, 871 F.Supp. at 454 (citation omitted). The court determined mere eligibility for financial returns did not necessarily dictate that the expected return would be consistent with commercial considerations, especially if restrictions prevented

the shares from enjoying any investment gains. Indeed, the court agreed with Plaintiffs' claim on their first appeal that "the issue [was] not whether [FESILVEN] was equityworthy.... Rather, the question presented was whether ... the Class E stock was worthless nevertheless *because of the restrictions on it.* [Commerce] never undertook this inquiry." (Pls. Initial Br. at 34–35) (emphasis added). The court held Commerce needed to analyze the effect of class E resale restrictions on reasonable shareholders' expectations of receiving their prospective share of available returns, given Aimcor's unchallenged financial ability to generate a reasonable rate of return within a reasonable period of time.

Commerce analyzed the restrictions on class E shares against the backdrop of FESILVEN's equityworthiness, just as the court had intended. Commerce did not need to reevaluate FESILVEN's financial condition as part of its remand determination. Plaintiffs presently attempt to mischaracterize Commerce's equityworthy determination as meaning "under a specified set of circumstances, an investor may invest in [FESILVEN's] equity." (Pls.' Remand Br. at 6 n. 8.) Plaintiffs use this narrow definition, for which they cite no authority, to claim an investigation into FESILVEN's financial condition is appropriate, because FESILVEN in 1991 allegedly did not meet the 'specified set of circumstances' that would warrant equity investment. Plaintiffs' argument merely attempts to relitigate the issue of FESILVEN's equityworthiness. Therefore, the court needs not address plaintiffs' claims which concern FESILVEN's financial situation, including allegations contending a low transaction price of certain preferred shares in a previous stock sale, an accumulating dividend burden, and deteriorating profitability.

## 2. Class E Share Dividend and Liquidation Rights

Plaintiffs next allege that class E shares have no right to either dividend or liquidation distributions. (*See* Pls.' Remand Br. at 13.) For instance, Plaintiffs assert Clause 7 of FESILVEN's Articles of Incorporation "provide[s] for distribution of all liquid profit and distribution of *all* capital at liquidation among Classes A–D *only*. By their exclusion from any enumerated rights to participation, it is clear that Class E shares accrue no such rights." *Id.* at 14.

Defendant concedes that Clause 7 of FESILVEN's Articles of Incorporation does not mention class E shares. (*See* Def.'s Mem. in Opp. to Pls.' Mot. for J. on the Agency R. at 12 n. 7; *see also* FESILVEN's Articles of Incorporation, FESILVEN Verification Ex. F–3, Conf.Doc. 16, at cl. 7.) However, Commerce argues this omission is consistent with its finding that class E shares are entitled to both dividend and liquidation rights, because Clause 7 merely enumerates exceptions to the general rights to dividend and liquidation distributions enjoyed by all FESILVEN shares. *See Remand Determination* at 18.

Article 292 of the Venezuelan Commercial Code provides that all shares have equal rights unless the Articles of Incorporation provide otherwise. *See id.* Clause 5 of FESILVEN's Articles of Incorporation states "[a]ll shares ... will confer upon their legitimate owners equal rights and obligations in everything, unless expressly indicated in this document," and Clause 6 provides that "[d]ividends on each share will be distributed among the shareholders in proportion to paid-in capital." (*See* FESILVEN's Remand Questionnaire Resp. of 2/10/95, Remand Pub.Doc. 6, at 2.) Commerce contends that such dividends on class E shares are payable after all preferred dividends have been paid as specified in Clause 7. *See Remand Determination* at 8 n. 2. Commerce further emphasizes that Clause 7 only addresses exceptions to the general rights of all FESILVEN shareholders provided in Clause 5. *Id.* at 14–15, 18. Accordingly, since none of the enumerated exceptions apply to class E shares, class E shares are not mentioned in Clause 7. *See id.* at 18. Indeed, Defendant asserted during oral argument that for class E shareholders to be deprived of dividends or liquidation entitlements, Clause 7 would have to expressly state that class E shares would not receive such rights. (*See* Oral Argument Tr. of 9/22/95, at 24.)

The court is unconvinced. During its initial investigation, Commerce was presented with apparently inconsistent evidence regarding class E's rights. (*See* Commerce's Verification Mem. of 11/6/92, Pub.Doc. 63, at 6) (noting that FESILVEN official explained class E shares received dividends, although Articles of Incorporation indicated class E did not). During the course of its remand investigation, Commerce furthermore noted that basic corporate documents did not clarify what rights, if any, class E shareholders enjoyed. (*See* FESILVEN's Supplemental Questionnaire Resp. of 2/28/95, Remand Pub. Doc. 14, at 1.) (requesting additional explanation regarding class E shares, because no documentation FESILVEN submitted with respect to terms and conditions of FESILVEN's stock had described or discussed terms and conditions of class E shares). Such lack of clarity surrounding class E's rights would give reasonable investors, considering purchasing class E stock, strong doubts as to the soundness of such an investment.

The court, rather, finds that class E shares are not entitled to dividend or liquidation distributions. The very terms of FESILVEN's Articles of Incorporation distribute remaining profit to classes A–D only. It is true the Articles of Incorporation do not explicitly state that class E shares will not receive, or are not entitled to, dividends or liquidation distributions. However, by dividing up all remaining profits, after preferred dividends have been paid, among the other classes of stock other than class E, FESILVEN has effectively excluded class E shares from receiving dividends. The additional information collected by Commerce does nothing to defeat the mandates of the Articles of Incorporation.

During oral argument, Defendant asserted this was not the case. Defendant insisted that class E's rights to dividend and liquidation distributions were encompassed by the reference to class C shares throughout Clause 7. Specifically, Defendant claimed the provisions regarding class C's receipt of dividends—after preferred dividends were paid—didn't refer to class C exclusively, but rather represented the dividend payment to be shared by *all common* FESILVEN shares, including class E shares. (*See* Oral Argument Tr., at 24.)

Such a reading of the Articles of Incorporation would allow one to conclude that class E shares were entitled to dividend and liquidation distributions. However, no evidence on the administrative record supports this interpretation. Commerce merely stated Clause 7 "enumerates no exceptional restrictions on class E shares." *Remand Determination* at 15. Commerce only analogized that because class C common shares have received dividends in the past, class E shares, also being common shares, could expect to receive dividends after distributions were made to the preferred shares. *See id.* at 8 & n. 2. Commerce did not demonstrate how evidence on the administrative record revealed that dividends earmarked for class E shares were encompassed in the distribution highlighted for class C shares. The court rejects the argument of Defendant and Defendant–Intervenor, because "[p]ost-hoc rationalizations of agency actions first advocated by counsel in court may not serve as the basis for sustaining the agency's determination." *U.H.F.C. Co. v. United States,* 9 Fed.Cir. (T) 1, 13, 916 F.2d 689, 700 (1990) (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). Therefore, the court finds class E shareholders are effectively precluded from receiving dividend or liquidation distributions.

### 3. Class E Share Resale Restrictions and Capital Appreciation

Plaintiffs also allege that no reasonable investor would have purchased class E shares in 1991, because the restrictions on resale of class E shares to par value virtually eliminate the potential for capital gains and render those shares worthless or of *de minimis* value. (*See* Pls.' Remand Br. at 10.) Plaintiffs also claim the class E shares are further restricted by existing shareholders' right of first refusal. *See id.* Commerce contends there are no legal restrictions limiting the resale value of class E stock to par value, and that no evidence indicates existing shareholders' right of first refusal affects the

expected return on a class E shareholder's investment. *See Remand Determination* at 3.

Commerce explains FESILVEN's class E shareholders can expect capital gains because FESILVEN's book value is subject to increase due to (1) retained corporate profits and (2) appreciation in corporate fixed assets brought on by inflation-driven revaluation. According to Commerce, these gains are subsequently distributed to FESILVEN's shareholders in the form of newly issued shares distributed on a pro rata basis. *See Remand Determination* at 5, 30. The newly distributed shares, like all FESILVEN shares, have a nominal, par value of 1000 Bolivars. (FESILVEN's Remand Questionnaire Resp. of 2/10/95, Remand Pub.Doc. 6, at 6.) Commerce finds the practical—*i.e.*, the financially driven, rather than legally mandated—result of this share distribution policy is that a single FESILVEN share is limited to its nominal, par value, as such pro rata share distributions of book value gains are made. *See Remand Determination* at 16. The thrust of Commerce's argument is investors still enjoy capital gains, because an investor's initial number of shares can, through the capitalization of profits and distribution of gains from inflation-driven asset revaluations, multiply into a larger number of shares which together can be sold for more than the purchase price of the original investment.

Commerce determined that class E shares are entitled to such share distributions, because FESILVEN's Articles of Incorporation "state that each class of share is subject to identical terms and conditions, subject to specific enumerated exceptions." *Remand Determination* at 6. Evidence on the record reveals FESILVEN allocated retained profit through a distribution of additional shares to all classes of shareholders in fiscal years 1987, 1988, and 1989, years *prior* to the issuance of class E shares. (*See Remand Determination* at 5; FESILVEN's Remand Questionnaire Resp. of 2/10/95, Conf.Doc. 2, at Ex. 4, 5, 7, 10.) Evidence on the record further shows FESILVEN revalued its fixed assets in 1991 to account for inflation, and subsequently issued class E shares on a pro rata basis to reflect that increase in book value. (*See* FESILVEN's Remand Questionnaire Resp. Of 2/10/95, Remand Pub.Doc. 6, at 5–6.) Moreover, the court finds no evidence in the record that indicates the right of first refusal enjoyed by existing shareholders would impede the class E shareholders from any potential return from FESILVEN's share distribution policies.

However, Plaintiffs claim that no evidence demonstrates that class E shares will actually receive such share distributions. (*See* Pls.' Remand Br. at 19.) Plaintiffs also assert that even if class E shares were entitled to additional share distributions, Commerce did not examine whether such benefits would be sufficient to equal the expected return of a reasonable private investor. *See id.* FESILVEN acknowledges that "[t]here is no specific discussion in the Articles of Incorporation regarding the allocation of . . . undistributed profits through the issuance of additional shares." (FESILVEN's Supplemental Questionnaire Response of 2/28/95, Remand Pub.Doc. 14, at 2.) FESILVEN claims that the capitalization of profits through the distribution of new ·shares is comparable to providing dividends. FESILVEN further claims, in essence, that since the Articles of Incorporation provide that "[d]ividends on each share will be distributed among the shareholders in proportion to paid-in capital," all shareholders, including class E shareholders, enjoy equal rights to receive additional shares. *Id.* at 2–3. Commerce also adopted this reasoning. *See Remand Determination* at 18–19.

As the discussion, *supra*, regarding Clause 7 shows, there is no evidence that class E shares will receive dividends. The argument that class E shares are entitled to additional share distributions because they are comparable to dividends, and the Articles of Incorporation provide that all shares are entitled to dividends, is therefore unconvincing. While the record does reveal that prior classes received additional share distributions, those prior classes also explicitly had rights to dividends. Under the terms of the Articles of Incorporation, class E shares are precluded from receiving dividends. The court therefore finds Commerce's determination that class E shareholders would not be

deprived of capital gains due to any resale restrictions or conditions to be unsupported by substantial evidence on the administrative record.

## CONCLUSION

The court finds Commerce's determination that (1) class E shareholders would not be deprived of capital gains due to any resale restrictions or conditions and (2) class E shares are entitled to receive dividend and liquidation distributions to be unsupported by substantial evidence on the record. Therefore, the court holds that Commerce's determination that the purchase of class E shares in 1991 was consistent with commercial considerations to be unsupported by substantial evidence on the administrative record. The court remands this action to Commerce to determine the appropriate countervailing duty for GOV's equity infusion into FESILVEN in 1991.