**AIMCOR, ALABAMA SILICON, INC., and American Alloys, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**CVG–VENEZOLANA de Ferrosilicio, C.A., Defendant-Intervenor.**

Slip Op. 96–201.
Court No. 93–06–00322.

United States Court of International Trade.

Feb. 25, 1997.

Baker & Botts, L.L.P., Washington, DC (William D. Kramer, Charles M. Darling, IV, Clifford E. Stevens, Jr., and Estee S. Levine ), for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Cynthia B. Schultz), Rebecca Rejtman, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC, of counsel, for defendant.

Morrison & Foerster, Washington, DC (Julie C. Mendoza, Craig A. Lewis, Sue–Lynn Koo and Donald B. Cameron), for defendant-intervenor.

### JUDGMENT ORDER

DiCARLO, Senior Judge:

In *Aimcor, Alabama Silicon, Inc. v. United States*, 19 CIT ——, 912 F.Supp. 549 (1995), the court remanded to Commerce the *Final Results of Remand Determination Pursuant to Court Remand, Aimcor, Alabama Silicon, Inc. v. United States*, 18 CIT 1117, 871 F.Supp. 447 (1994) (No. 93–06–00322) [hereinafter *First Remand Determination* ]. In *Aimcor*, the court addressed, *inter alia*, whether the purchase of newly issued FESILVEN Class E shares by Venezuelan government-owned (GOV) entities in 1991 was consistent with commercial considerations, given various restrictions on those shares. 19 CIT at ——, 912 F.Supp. at 550. Commerce had determined in its *First Remand Determination* that the GOV stock purchase was consistent with commercial considerations, and therefore was not countervailable. The court found that Commerce's conclusions in its *First Remand Determination* that (1) class E shareholders would not be deprived of capital gains due to any resale restrictions or conditions and (2) class E shares were entitled to receive dividend and liquidation distributions, was unsupported by substantial evidence on the rec-

ord. *Aimcor, Alabama Silicon, Inc.*, 19 CIT at ——, 912 F.Supp. at 555. The court therefore remanded the matter to Commerce to calculate the appropriate countervailing duty for the equity infusion into FESILVEN in 1991. *Id.*

Defendant subsequently claimed that the court's remand order presented a novel question, because Commerce would have to determine the price of stock in an equity-worthy firm that was not publicly traded and thus had no readily ascertainable market price. (Def.'s Mot. for an Extension of Time to Conduct Remand at 2.) Plaintiff argued that Commerce was merely required to apply an established methodology, treating government equity infusions made on terms inconsistent with commercial considerations as equivalent to grants, to determine the countervailing duty for the 1991 equity infusion into FESILVEN. (Pls.' Opp'n to Def.'s Mot. at 4.) Defendant challenged this claim, asserting that the grant methodology had previously only been applied in cases of equity infusions into unequity-worthy companies. (Tr. of Telephone Conference of Mar. 18, 1996, at 6.)

In *Aimcor*, the court previously held that Commerce's conclusion that the Class E stock purchase was on terms consistent with commercial considerations was unsupported by substantial evidence, because the evidence revealed the very terms of FESILVEN's Articles of Incorporation effectively precluded Class E shares from receiving dividend or liquidation distributions. 19 CIT at ——, 912 F.Supp. at 552–55. Given such preclusion, the court found there could be no reasonable expectation of a competitive return on an investment in Class E shares, and that any purchase of Class E shares would have been made on terms inconsistent with commercial considerations. Therefore, the court rejected Defendant's and Defendant–Intervenor's claims that, because FESILVEN was deemed equity-worthy at the time of the Class E share purchase, the grant methodology was inapplicable in this case. (*See* Tr. of Telephone Conference of Mar. 18, 1996, at 10–12.) In an order dated April 9, 1996, the court directed Commerce to use the standard grant methodology for calculating the coun-

tervailing duty rate for the equity infusion FESILVEN received in 1991. Commerce has complied with that order, using the grant methodology to calculate a countervailable subsidy rate of 21.02 percent *ad valorem* for the 1991 equity infusion. (*Results of Redetermination Pursuant to Court Remand* at 5, *Aimcor, Alabama Silicon, Inc. v. United States*, 19 CIT ——, 912 F.Supp. 549 (1995) *and Aimcor, Alabama Silicon, Inc. v. United States*, 20 CIT ——, Slip Op. 96–11, 1996 WL 7150 (Jan. 4, 1996) (Consol.Ct. No. 93–06–00322) [hereinafter *Second Remand Determination* ].)

Commerce had previously determined that FESILVEN received electricity at preferential rates, and calculated the countervailable duty rate for that benefit to be 22.08 percent *ad valorem,* a determination this court previously sustained. *See Aimcor, Alabama Silicon, Inc.,* 18 CIT 1117, 1118, 871 F.Supp. 447, 449 (1994) (sustaining in part and re-

manding in part *Certain Ferrosilicon from Venezuela,* 58 Fed.Reg. 27,539 (final aff. determination & CVD order), *as amended,* 58 Fed.Reg. 36,394 (Dep't Comm.1993)). To determine the overall countervailable subsidy rate, Commerce added that 22.08 percent to the 21.02 percent rate for the 1991 equity infusion. Therefore, Commerce has determined the overall countervailable subsidy rate for FESILVEN to be 43.10 percent *ad valorem.* (*Second Remand Determination* at 5.) Because Commerce has complied with this court's order, Commerce's *Second Remand Determination* is sustained.