**SLIP OP. 99-129**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**JAMES L. WATSON, SENIOR JUDGE**
-----------------------------------------------------------X
**AIMCOR, ALABAMA SILICON, INC.,**  )
**and AMERICAN ALLOYS, INC.,**

                                                     )

            **Plaintiffs,**

                                                     )     **Consol. Ct. No. 93-06-00322**

                 **v.**

                                                     )

**UNITED STATES,**

                                                     )

            **Defendant.**
-----------------------------------------------------------X

                                        Dated: December 10, 1999

*Baker & Botts, L.L.P.* (*William D. Kramer* and *Clifford E. Stevens, Jr.*, Esqs.*)* for plaintiffs.

*David W. Ogden*, Acting Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*A. David Lafer,* Senior Trial Counsel, and *James H. Holl, III*, Attorney); *Christine Savage*, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel.

*Kaye, Scholer, Fierman, Hays & Handler, LLP* (*Julie C. Mendoza, Donald B. Cameron,* and *Dean C. Garfield,* Esqs.) for defendant-intervenor.

[Defendant-intervenor's motion to dissolve preliminary injunction **DENIED**; plaintiffs' motion for leave to respond to defendant's response is **DENIED**. **FURTHER** *ORDERED* *sua sponte:* due to the rescission of the countervailing duty order by Commerce and the possibility of mootness in this case, further proceedings are stayed pending the final decision in other actions as to whether rescission of the order by Commerce was valid.]

**OPINION AND ORDER**

**<u>INTRODUCTION</u>**

This is a countervailing duty case involving ferrosilicon imported from Venezuela within the

court's jurisdiction under 28 U.S.C. §1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(i). Pursuant to 19

U.S.C. § 1516a(c)(2), upon the request of an interested party and upon a proper showing, the Court of International Trade may enjoin the liquidation of entries covered by a countervailing duty determination of the United States Department of Commerce ("Commerce). If the court sustains the cause of action, in whole or in part, entries of merchandise covered by a published determination of Commerce the liquidation of which was enjoined in accordance with § 1516a(c)(2),  "*shall* be liquidated *in accordance with the final court decision in the action*"

19 U.S.C. § 1516a(e)(2) *(emphasis added)*.

Defendant-intervenor, Ferroatlantica de Venezuela, S.A. ("Ferroven")(formerly CVG-Venezolana de Ferrosilicio, C.A. ("FELSILVEN")), the sole Venezuelan producer and exporter of ferrosilicon to the United States, moves to dissolve the court's May 29, 1996 preliminary injunction enjoining, during the pendency of this litigation, the liquidation of certain entries of ferrosilicon from Venezuela covered by a countervailing duty order. As grounds for dissolution, defendant-intervenor alleges that due to changed circumstances maintenance of the injunction would be inequitable and dissolution is in accord with the terms of the injunction order relating to revocation. Defendant concurs with the reasons advanced by defendant-intervenor for dissolution of the injunction.

Plaintiffs, AIMCOR Alabama Silicon, Inc. and American Alloys, Inc., domestic producers of ferrosilicon, vigorously oppose dissolution because liquidation of the entries prior to a final decision in this case would be contrary to § 1516a(e), contrary to the terms of the injunction itself, and in any event, maintenance of the injunction would not be inequitable, as claimed by defendant-intervenor.

The issue presented is whether, under relevant statutory provisions, and the facts and circumstances of this case,  the court should exercise its discretion to dissolve the preliminary injunction

prior to a final decision on the merits.  For the reasons set forth below, the motion to dissolve is denied.

## **BACKGROUND**

After Commerce published its final affirmative countervailing duty determination covering ferrosilicon from Venezuela, *see Final Affirmative Countervailing Duty Determination: Ferrosilicon From Venezuela; and Countervailing Duty Order for Certain Ferrosilicon From Venezuela*, 58 Fed. Reg. 27,539, 27,542 (May 10, 1993),[1] plaintiffs commenced this action and moved for judgment on the agency record pursuant to USCIT R. 56.2 contesting certain parts of Commerce's determination. Specifically, plaintiffs challenge Commerce's finding that the purchase by the Venezuelan government's holding company of a newly issued class of common stock, Class "E" shares, from the exporter,  C.V.G. Venezolana de Ferrosilicio, C.A. ("FILSILVEN"), was consistent with commercial considerations, and therefore, was not countervailable.[2] *Id.* at 27,542. On December 13, 1994, Chief Judge DiCarlo affirmed Commerce's final determination in part, and remanded in part, with directions for further consideration and  findings on the issue of  whether the Class "E" stock purchase was inconsistent with commercial considerations based on the adequacy of expected return. (Remand I). *See Aimcor, Alabama Silicon, Inc. v. United States,* 871 F. Supp. 447, 454 (CIT 1994). *See al*so U.S.C.  § 1677(5)(A)(ii)(I)("provision of capital... on terms inconsistent with commercial considerations").

---

[1]Commerce amended the countervailing duty order to cover both dutiable and nondutiable ferrosilicon from Venezuela. *See Amendment to Countervailing Duty Order*: *Ferrosilicon From Venezuela,* 58 Fed. Reg. 36,394 (Dept. of Commerce July 7, 1993).

[2]Ferroven purchased the assets of FELSILVEN, and on January 26, 1999 the court ordered that Ferroven be substituted as defendant-intervenor for FELSILVEN.

In Remand I, Commerce again found  that Venezuela's purchase of FELSILVEN's  Class "E"

stock was consistent with commercial considerations, and hence, was not a countervailable subsidy.

*Final Results of [First] Remand Determination Pursuant to Court Remand (March 30, 1995)*

("Remand determination I").  Plaintiffs challenged that redetermination.

On December 29, 1995, Chief Judge DiCarlo held that Commerce's findings that Class "E"

shareholders would not be deprived of capital gains due to any resale restrictions or conditions, and

that the shares are entitled to receive dividends and liquidation distributions are unsupported by

substantial evidence on the record. Accordingly, the court held that Commerce's determination that the

Venezuelan government's purchase of the Class "E" shares in 1991 was consistent with commercial

considerations was unsupported by substantial evidence on the record and remanded  to Commerce

"to determine the appropriate countervailing duty" for Venezuela's  equity infusion into FELSILVEN

IN 1991("Remand II"). Aimcor v. *United States,* 912 F. Supp, 549, 555 (CIT 1995). *See also*, 20

CIT 94 (January 4, 1996). In an unpublished order dated April 9, 1996, Judge DiCarlo further directed

Commerce to use the standard grant methodology for calculating the countervailing duty rate for the

equity infusion FELSILVEN received in 1991.

On Remand II, in accordance with  the court's direction, *supra*, Commerce determined the

total countervailing duty rate to be 43.10 percent ad valorem for FELSILVEN.(which included a

countervailable subsidy rate of 21.02 percent *ad valorem* duty rate for the 1991 equity infusion).

*Results of [Second] Redetermination Pursuant to Court Remand* (April 17, 1996).

On April 30, 1996, plaintiffs, sought pursuant  to 19 U.S.C. § 1516a (c)(2) to protect itself

against the effects of perceived subsidization of the ferrosilicon exporter by the government of

Venezuela by enjoining, pending the final decision in this case, the liquidation of the entries of ferrosilicon covered by the countervailing duty order. On May 29, 1996, Judge DiCarlo granted plaintiffs a preliminary injunction  "enjoin[ing] [Commerce] during the pendency of this litigation from the liquidation of entries that were entered , or withdrawn from warehouse, for consumption on or after January 1, 1995, and are covered by the countervailing duty order covering ferrosilicon from Venezuela . The injunction has been continuously in effect, and the liquidation of entries has been enjoined, since the date of issuance.

On December 31, 1996, Senior Judge DiCarlo sustained Commerce's Second Redetermination on Remand II calculating the countervailing duty rate. *Aimcor v. United States,* 960 F. Supp. 305 (CIT 1996), *aff'd-in-part, rev'd-in-part, and remanded,* 154 F.3d 1375 (Fed. Cir. 1998). *See also, 957* F. Supp. 289, 291 (CIT 1997).   Defendant-intervenor, FELSILVEN, thereupon appealed the final decision of December 31, 1996 to the Federal Circuit.

On September 9, 1998,  the Federal Circuit affirmed-in-part and reversed Senior Judge DiCarlo's reversal of Commerce's determination that owners of Class "E" stock could enjoy capital appreciation. The Federal Circuit  remanded to Judge DiCarlo the issue of whether an expected  return based on  potential capital appreciation of the shares alone was sufficient to make the purchase of Class "E" shares by the government of Venezuela consistent with commercial considerations (and hence not a countervailable subsidy). *Aimcor, Alabama Silicon, Inc. v. United States*, 154 F. 3d 1375, 1378-80 (Fed. Cir. 1998). Thereupon, on December 30, 1998, Judge DiCarlo again remanded the Class "E"

stock purchase issue to Commerce ("Remand III").[3]

On June 3, 1999, Commerce issued its final results of redetermination in Remand III again determining that the Venezuelan government's purchase of Class E shares was consistent with commercial considerations, and therefore, not a countervailable subsidy. *Final Results of [Third] Redetermination Pursuant to Court Remand (June 3, 1999).*

On July 15, 1999, plaintiffs  filed their comments with this court challenging the final results of Remand III,  the court has extended the time for defendant's and defendant-intervenor's  rebuttal responses to plaintiffs' comments until  December 14, 1999, and on October 14, 1999, Ferroven filed its motion to dissolve the preliminary injunction.

After six years of litigation at both the trial and appellate levels, including three remands to Commerce, and during the pendency of this case, the ITC (which had previously made an affirmative injury determination in 1993, *see* USITC Pub. 2650 (1993)), received and considered a request to review its affirmative determination in light of "changed circumstances." ITC determined that certain of the alleged changed circumstances were sufficient to warrant review investigations. On July 28, 1998, the Commission initiated changed circumstances reviews with respect to the antidumping duty and countervailing duty orders covering imports of ferrosilicon from countries, including Venezuela. 63 Fed. Reg. 40,314 (July 28, 1998).

However, on May 21, 1999, the Commission suspended those changed circumstances reviews, and on *reconsideration* of its *original determinations* reversed its previous affirmative injury

---

[3] Following the death of Senior Judge DiCarlo, by order of July 9, 1999 this action was reassigned to the writer.

determinations *ab initio,* and issued a negative determination. *See USITC Pub. 3218 (August 24,*

*1999).*  Based on the Commission's action, Commerce thereupon "rescinded" both its antidumping

duty order concerning ferrosilicon from Venezuela, Brazil, Kazakhstan, People's Republic of China,

Russia, and Ukraine, and its countervailing duty order concerning ferrosilicon from Venezuela, which is,

in part, *sub judice* in the instant case.  *See* "Notice of Rescission," *64 Fed. Reg. 51,097, 51,098*

*(Department of Commerce , September 21, 1999).*

Rescission of the countervailing duty order was effective *ab initio* -- from the date of the

issuance of the original order -- thus making the order inapplicable to all unliquidated entries of

ferrosilicon from the relevant countries covered by the order. *Id.*  The court is advised that Commerce

is now in the process of issuing liquidation instructions to the Customs Service for all relevant countries

*other than Venezuela*, and so advised Customs on August 24, 1999.  With respect to unliquidated

entries of ferrosilicon from Venezuela that are the subject of the court ordered injunction, the

Government continues to comply with the injunction.

A number of suits have been commenced contesting the validity of ITC's  negative injury

determination on reconsideration and the validity of Commerce's "rescission" of the countervailing duty

order.[4]

## **PARTIES' CONTENTIONS**

Ferroven and defendant advance the following grounds for dissolution: (1) ITC has made a

negative injury determination after reconsideration of its previous affirmative injury determination*;* (2) in

---

[4] Court Nos. 99-09-00583*,* 99-10-00625, 99-10-00628, 99-00-00614, *99-10-00634,* 99-10-00660, 99-10-00662, and 99-10-00657.

accordance with ITC's negative injury, Commerce  "revoked" the countervailing duty order; (3) since the countervailing duty order was "revoked" by Commerce, under the terms and conditions of  the injunction, it must be dissolved and the entries liquidated without assessment of countervailing duties; and (4) courts have inherent authority to dissolve injunctions where the prerequisite factors for issuing an injunction no longer exist (*i.e.*, likelihood of success on the merits and irreparable harm); and (5) due to changed circumstances, maintenance of the injunction would be inequitable, and the court should exercise its discretion to dissolve the injunction.

Plaintiffs oppose dissolution contending: (1) the plain language of the statute, 19 U.S.C. § 1516a(e), requires maintenance of the preliminary injunction so that the entries may "*be  liquidated in accordance with the final court decision in the action*"  (emphasis added.); (2) admittedly, there has been no final decision in this case on the merits; (3) ITC's negative injury determination and Commerce's rescission of the countervailing duty order are invalid and are currently challenged by plaintiffs (and other parties) in other pending cases; (4) contrary to Ferroven's and defendant's assertions, Commerce did not "revoke" its countervailing duty order, but rather expressly "rescinded" the order; (5) in any event, there is no final court decision in this or any other case "revoking" the countervailing duty order, as required by the express terms of the injunction; (6) therefore, the terms of the injunction itself preclude dissolution; (7) there are no "changed circumstances" that make maintenance of the injunction inequitable or warrant dissolution of the injunction; (8) plaintiffs do not have the burden of again relitigating  the prerequisites for injunctive relief in order to avoid a dissolution of the injunction; (9) the burden of proof to show that the maintenance of the injunction would be inequitable is on the party moving for dissolution, *viz.*, Ferroven.

## **DISCUSSION**

### **1.**

### **The relevant statutory provisions.**

The relevant language of the statute, 19 U.S.C.§ 1516a(e), provides that "[i]f the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit - - * * * (2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section, shall *be liquidated in accordance with the final court decision in the action"* (Emphasis added.). The statutory language is clear,  it is undisputed that there has been no final decision in this case, and therefore, under the terms of the statute, liquidations remain enjoined until a final decision. *See Hosiden Corp. v. Advanced Display Mfrs. Of America,* 85 F.3d 589, 591 (Fed. Cir. 1996) ("19 U.S.C.

 § 1516a(e) requires that liquidation, once enjoined, remains suspended until there is a '*conclusive* court decision which decides the matter, so that subsequent entries can be liquidated in accordance with that conclusive decision'." *Id.* (quoting *Timkin Co. v. United States,* 893 F.2d 337. 342 (Fed. Cir. 1990)) (emphasis by Federal Circuit)..

### **2.**

### **The terms and conditions of the injunction.**

Ferroven's reliance on the terms and conditions of the injunction itself with reference to "revocation" of the countervailing duty order are misplaced.  Thus, the injunction, at 2-3,  provides in pertinent part:

> Nothing contained in this Order shall prevent the ultimate liquidation of the subject entries with the assessment of countervailing duties after the final and conclusive Court decision unless a *final decision in this or another action results in the revocation* of the above-referenced countervailing duty order. In the event of *such revocation*, liquidation may proceed without the assessment of countervailing duties. *In the absence of revocation, liquidation may proceed after the final and conclusive Court decision on the subject entries . . . .*

Fundamentally, of course, the terms of the preliminary injunction order with reference to liquidation of entries and revocation of a countervailing duty order must be read to harmonize with the pertinent statutory provisions for the injunction itself, for liquidation of entries the liquidation of which has been enjoined,  and for revocation of countervailing duty orders. Thus, under both the statute and the express terms of the injunction, liquidation of entries is enjoined until (1) after the *final and conclusive Court decision in this action* covering the subject entries, or (2) after a *final decision in this or another action results in revocation* of the countervailing duty order.  Clearly, neither of the foregoing alternative events has occurred. Clearly, there was no "revocation" of the countervailing duty order by Commerce, but rather a "rescission" *ab initio.*

However, even *assuming arguendo* that Commerce's "rescission" of the countervailing duty order constituted a "revocation,"[5] as urged by Ferroven and defendant, nonetheless there still has been

---

[5] The sometimes invoked principle, "if it looks like a duck, walks like a duck, and talks like a duck, it's a duck," does not apply here. There is no suggestion by Commerce in either its "Notice of Rescission," 64 Fed. Reg.51097 (Sept. 21, 1999), itself or in the procedures Commerce followed leading up to the order of rescission that Commerce intended to follow its regulations for revocation of the countervailing duty order. *See e.g. 19 C.F.R. §§ 351.221(b)(1), (4)(ii), (5); 351.222(g)(3)(i), (ii), (iv), (v); 351.309.* The Notice of Rescission is clear as to what action Commerce intended to take

neither a final  court decision in this action resulting in the so-called revocation of the order, nor has

there been a final decision in any other action resulting in revocation of the countervailing duty order in

this case.  Plainly, the terms of the injunctions itself do not require dissolution, as contended by

Ferroven.

## 3.

## The  "changed circumstances" and inequities alleged by Ferroven.

Ferroven further contends that ITC's findings and negative injury determination and

Commerce's  action constitute changed circumstances that existed when the injunction was granted that

make it inequitable to maintain the injunction, and place a burden on plaintiffs to now demonstrate the

prerequisite elements of a preliminary injunction (particularly, *likelihood of success on the merits and*

*irreparable harm)* to avoid dissolution.   Ferroven further argues that the injunction should not be

maintained in this case as a substitute for injunctive relief that properly should be sought by plaintiffs in

---

(rescission effective from the date of issuance), and the order is neither called, nor does it  purport to be a revocation. Commerce's rescission action, effective from the date of issuance of the order, demonstrates clearly an intent, in light of the negative injury determination of ITC,  to rescind *ab initio* rather than "revoke" the countervailing duty order.

The court is confident that Commerce knows how to go about revoking its orders. The agency chose no to do so.  In point of fact, as previously mentioned, on July 28, 1998, Commission instituted changed circumstances reviews with respect to antidumping and countervailing duty orders covering imports of ferrosilicon from countries including Venezuela, 63 Fed. Reg. 40,314 (July 28, 1998), but on May 21, 1999, the Commission suspended those reviews and instituted new proceedings to reconsider its original affirmative injury determinations, and ultimately voted to reverse its original injury determinations. *See USITC Pub. 3218 (August 24, 1999).*  Based on the reconsideration determinations, Commerce determined to "rescind" (not revoke) the orders. 64 Fed. Reg. 51,097 (September 21, 1999)("Notice of Rescission").

the new pending cases challenging the recent ITC and Commerce actions.

Generally, of course, courts have inherent power and the discretion to modify injunctions for changed circumstances. *System Federation No. 91 v. Wright,* 364 U.S. 642, 647 (1961). *See also, Sierra Club v. U.S. Army Corps of Engineers,* 732 F. 2d 253, 256 (2d Cir. 1984), *cert. denied*, 475 U.S. 1084 (1984). However, a party moving for modification bears the burden of showing that changed circumstances, legal or factual, make the continuation of the injunction inequitable. *See e.g., Favia v. Indiana University of Pennsylvania, 7 F. 3d 332, 340 (3d Cir. 1993) ("In order to prevail on a motion to modify, the movant must establish a change in circumstances that would make the original preliminary injunction inequitable. . . .").*

The preliminary injunction in the current case was granted *pendente lite,* as permitted by the statute, and once such injunction is granted, a party moving for dissolution must make a  very compelling demonstration, both of changed circumstances and resulting inequities for the moving party, to justify dissolution of the injunction prior to a final decision on the merits of the  action. Since here prior to a final decision on the merits, dissolution of the preliminary injunction may eviscerate the remedial effects conferred by the countervailing duty statute ( *i.e.*, assessment of countervailing duties on the entries the liquidation of which have been enjoined), the potential for a dissolution prior to a final decision to cause irreparable harm to plaintiffs is obvious.

Moreover, the alleged changed circumstances, based on the factual findings of the ITC underlying its reconsideration of its affirmative injury determination[6] and Commerce's rescission of the

---

[6] Ferroven posits that the injunction was wrongfully obtained by plaintiffs, and therefore, should be dissolved because of the alleged price-fixing and  deceptive conduct by the domestic producers of

countervailing duty order,  are at this juncture simply contested *administrative* findings subsequent to the countervailing duty order subject to judicial review.  Until there has been an adjudication of the validity of the findings, proceedings, and action taken by the agencies, the court sees no basis for finding the injunction to be inequitable, or justification for dissolving the preliminary injunction. If, after a dissolution of the injunction, plaintiffs were ultimately to prevail in the currently pending cases (which includes those cases in which ITC's negative injury determination and Commerce's rescission are contested), entries liquidated without assessment of countervailing duties could not be reliquidated with assessment of countervailing duties in accordance with the final court decision in this case.

For all the foregoing reasons, and in the exercise of the court's discretion, defendant-intervenor's motion to dissolve is denied.

## 4.

## Stay of further proceedings.

The resolution of the issues pending in the new cases contesting the validity of  ITC's negative injury determination and Commerce's rescission of the countervailing duty order could  vitally impact the viability of the current and future proceedings in the instant case. If, for example, should Commerce's rescission of the countervailing duty order *ab initio* be ultimately sustained in other pending cases,  with no valid countervailing duty order in this case, all subsequent judicial review

---

ferrosilicon, as found by the ITC. The alleged wrongful conduct of plaintiffs has not been judicially established, and ITC's findings of price fixing and deceptive conduct  have yet to be litigated in other cases. It would be entirely imprudent for this court to, in effect,  preemptively adjudicate the contested factual findings concerning alleged wrongdoing which are not before this court in order to dissolve the preliminary injunction.

becomes moot. *See Verson v. United States*, 5 F. Supp. 2d 963, 966 (CIT 1998).

In light of the distinct possibility of mootness and resulting loss of jurisdiction,[7] and in the interest of  judicial economy and avoidance of possibly further unnecessary  proceedings conducted at considerable expense to the parties, it is hereby **ORDERED**  *sua sponte* that further proceedings in this case be stayed pending final resolution of whether Commerce's rescission of the countervailing duty order is valid.

Plaintiffs' application for leave to file a response to   defendant's response to Ferroven's motion to dissolve the preliminary injunction is denied.

Dated: New York, New York
December 10, 1999

_____
**James L. Watson, Senior Judge**

---

[7]Because Article III of the Constitution precludes the court, after the case becomes moot,  from continuing to exercise jurisdiction or issuing merely an advisory opinion, *see Associacao dos Industriais der Cordoariae Redes v. United States*, 17 CIT 754, 759, 828 F. Supp. 978, 984 (1993), a final judicial decision sustaining Commerce's rescission of the countervailing duty order *ab initio* would moot the current case and require its dismissal for lack of jurisdiction.