**Slip Op. 01-30**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  RICHARD K. EATON, JUDGE**

|  |  |  |
|---|---|---|
| **ELKEM METALS CO.; AMERICAN ALLOYS, INC.; APPLIED INDUSTRIAL MATERIALS CORP.; and CC METALS & ALLOYS, INC.,** | : | |
| | : | |
| Plaintiffs/Plaintiff-Intervenors, | : | |
| and | : | |
| **GLOBE METALLURGICAL, INC.,** | : | |
| Plaintiff-Intervenor, | : | |
| v. | : | **Consol. Court No. 99-10-00628** |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant, | : | |
| and | : | |
| **FERROATLANTICA DE VENEZUELA; GENERAL MOTORS CORP.; ASSOCIAÇÃO BRASILEIRA DOS PRODUCTORES DE FERROLIGAS E DE SILICO METALICO, et al.; and RONLY HOLDINGS, LTD., et al.,** | : | |
| Defendant-Intervenors. | : | |

Domestic producers of ferrosilicon moved for preliminary injunctions to enjoin the liquidation of entries of ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela pending resolution of action challenging United States International Trade Commission's ("ITC") reconsideration and reversal of certain final affirmative material injury determinations, which resulted in the rescission by the United States Department of Commerce of the antidumping and countervailing duty orders previously covering the subject entries.  The ITC and defendant-intervenors challenged petitioners' allegations with respect to each of the four

prongs of the test for preliminary injunction. The Court of International Trade, Eaton, J., held that petitioners had failed to meet their burden and were, therefore, not entitled to preliminary injunctive relief.

[Plaintiffs' and Plaintiff-Intervenor's motions denied.]

Decided: March 15, 2001

*Baker Botts L.L.P.* (*William D. Kramer*, *Kirk K. Van Tine*, *Martin Schaefermeier*, and *Samuel J. Waldon*);[*] *Eckert Seamans Cherin & Mellott, LLC* (*Dale Hershey* and *Mary K. Austin*), for Plaintiff Elkem Metals Company.

*Doepken, Keevican & Weiss* (*Gordon W. Schmidt*), for Plaintiff American Alloys, Inc.

*Altheimer & Gray* (*Theodore J. Low*), for Plaintiff Applied Industrial Materials Corporation.

*Arent Fox Kintner Plotkin & Kahn, PLLC* (*Stephen L. Gibson*, *George R. Kucik*, and *Nada S. Sulaiman*), for Plaintiff CC Metals and Alloys, Inc.

*Dangel & Fine, LLP* (*Edward T. Dangel, III*, *Michael K. Mattchen*, and *Jonathan L. Glover*), for Plaintiff-Intervenor Globe Metallurgical, Inc.

*Lyn M. Schlitt*, General Counsel, United States International Trade Commission; *James A. Toupin*, Deputy General Counsel, United States International Trade Commission (*Marc A. Bernstein*), for Defendant.

*Kaye, Scholer, Fierman, Hays & Handler, LLP* (*Julie C. Mendoza*, *Donald B. Cameron*, *R. Will Planert*, and *Margaret E. Scicluna*), for Defendant-Intervenor Ferroatlantica de Venezuela.

*Hogan & Hartson L.L.P.* (*Mark S. McConnell* and *Jonathan J. Engler*), for Defendant-Intervenor General Motors Corporation.

*Dorsey & Whitney LLP* (*Philippe M. Bruno* and *Kevin B. Bedell*), for Defendant-Intervenors Associação Brasileira dos Productores de Ferroligas e de Silico Metalico, Companhia Brasileira Carbureto de Calcio-CBCC, Companhia de Ferroligas de Bahia-FERBASA, Nova Era Silicon S/A, Italmagnesio S/A-Industria e Comercio, Rima Industrial S/A, and Companhia Ferroligas Minas Gerais-Minasligas.

*Aitken Irvin Berlin & Vrooman, LLP* (*Bruce Aitken*, *Kieran Sharpe*, and *Virginie*

---

[*] *Verner, Liipfert, Bernhard, McPherson and Hand, Chartered* has been substituted as attorney of record for Plaintiff Elkem Metals Company in place of *Baker Botts L.L.P.*

*Lecaillon*), for Defendant-Intervenors Ronly Holdings, Ltd., Cheliubinski Electrometalurgical Works, Kuznetsk Ferroalloy Works, Stakhanov Ferroalloy Works, and Zaporozhye Ferroalloy Works.

### MEMORANDUM OPINION

**EATON, JUDGE:**  Plaintiffs Elkem Metals Company ("Elkem"), American Alloys, Inc.

("American Alloys"), Applied Industrial Materials Corporation ("AIMCOR"), and CC Metals

and Alloys, Inc. ("CC Metals"), and Plaintiff-Intervenor Globe Metallurgical, Inc. ("Globe")

(collectively, "Petitioners"), move for preliminary injunctions to enjoin liquidation of entries

pending a final decision on the merits of the underlying action.  The court has the power to grant

the requested relief.  See 28 U.S.C. § 1585 (1994); 28 U.S.C. § 2643(c)(1); see also The All

Writs Act, 28 U.S.C. § 1651(a).[1]  However, this Court, for the reasons set forth below, denies

Petitioners' motions.

### BACKGROUND

The present motions were made in the context of a challenge to the United States

International Trade Commission's ("ITC") reconsideration and reversal of its final affirmative

---

[1]      Petitioners have asserted jurisdiction under 28 U.S.C. § 1581(c) and move for injunctive relief pursuant to 19 U.S.C. § 1516a(c)(2) (1994).  Two points should be noted.  First, the Court need not and does not address, at this time, the question of whether jurisdiction is properly invoked under § 1581(c), rather than § 1581(i).  See Shree Rama Enters. v. United States, 21 CIT 1165, 1166, 983 F. Supp. 192, 194 (1997) ("The court has jurisdiction under 28 U.S.C. § 1581 (1994).  It is unnecessary to specify whether § 1581(c) or § 1581(i) applies, as the court is not granting the requested relief."); see also Shakeproof Indus. Prods. Div. of Ill. Tool Works, Inc. v. United States, 104 F.3d 1309, 1313 (Fed. Cir. 1997).  Second, any references to the antidumping and countervailing duty statute are to the current version, as amended by the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994) ("URAA").  It should not, however, be inferred that the amendments made to the statute by the URAA apply to the merits of the underlying action, as the Court does not reach this issue.

material injury determinations in antidumping investigations Nos. 731-TA-566–570 and 731-TA-641 (Final) covering ferrosilicon[2] from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, and countervailing duty investigation No. 303-TA-23 (Final) covering ferrosilicon from Venezuela.

The ITC issued the original injury determinations, whose reconsideration and reversal are the subject of the underlying dispute, in 1993 and 1994, shortly after the United States International Trade Administration ("ITA") found that ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela was being sold in the United States at less than fair value, and that the Venezuelan government was subsidizing ferrosilicon sales. Based on the final determinations of the ITA and ITC, the United States Department of Commerce ("Commerce") issued antidumping orders against ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, and a countervailing duty order against ferrosilicon from Venezuela. See Antidumping Duty Order: Ferrosilicon From Brazil, 59 Fed. Reg. 11,769 (Mar. 14, 1994); Antidumping Duty Orders: Ferrosilicon From Venezuela and the Russian Federation, 58 Fed. Reg. 34,243 (June 24, 1993); Final Affirmative Countervailing Duty Determination: Ferrosilicon From Venezuela; and Countervailing Duty Order for Certain Ferrosilicon From Venezuela, 58 Fed. Reg. 27,539 (May 10, 1993), amended by 58 Fed. Reg. 36,394 (July 7, 1993); Antidumping Duty Orders: Ferrosilicon From Kazakhstan and Ukraine, 58 Fed. Reg.

---

[2]     Ferrosilicon is an iron alloy used in the production of steel and cast iron. See Ferrosilicon from Brazil, Kazakhstan, People's Republic of China, Russia, Ukraine, and Venezuela, 64 Fed. Reg. 51,097, 51,097 (Sept. 21, 1999).

18,079 (Apr. 7, 1993), amended by 60 Fed. Reg. 64,018 (Dec. 13, 1995); Antidumping Duty

Order:  Ferrosilicon From the People's Republic of China, 58 Fed. Reg. 13,448 (Mar. 11, 1993).


The imposition of these orders remained unchallenged until 1998, when certain Brazilian

ferrosilicon producers petitioned the ITC to institute a review of its final affirmative material

injury determination as to ferrosilicon from that country.  The petition alleged that a recently

disclosed price-fixing conspiracy among certain domestic manufacturers, and its consequent

distortion of the price data presented to the ITC during its original material injury investigations,

constituted "changed circumstances" sufficient to warrant review pursuant to 19 U.S.C. §

1675(b).  See Ferrosilicon From Brazil, China, Kazakstan [sic], Russia, Ukraine, and Venezuela,

63 Fed. Reg. 27,747, 27,747 (May 20, 1998).  On July 28, 1998, the ITC instituted the requested

changed circumstances review and, further, self-initiated changed circumstances reviews of the

other related final affirmative material injury determinations, i.e., those pertaining to ferrosilicon

from China, Kazakhstan, Russia, Ukraine, and Venezuela.  See Ferrosilicon From Brazil, China,

Kazakhstan, Russia, Ukraine, and Venezuela, 63 Fed. Reg. 40,314 (July 28, 1998).


In May 1999, the ITC suspended these changed circumstances reviews and proceeded to

"reconsider" its original determinations.  See Ferrosilicon From Brazil, China, Kazakhstan,

Russia, Ukraine, and Venezuela, 64 Fed. Reg. 28,212 (May 25, 1999); see also USITC Pub.

3218, at 6 (Aug. 1999) (concluding that "reconsideration" was "a more appropriate procedure for

review of the original determinations").  Thereafter, the ITC reversed its original affirmative

material injury determinations ab initio and issued a negative injury determination as to each of

the original investigations.  See Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine,

and Venezuela, 64 Fed. Reg. 47,865 (Sept. 1, 1999); see generally USITC Pub., at 1. Thus, the

ITC concluded, on reconsideration, that the domestic industry had never been materially injured,

or threatened with material injury, by reason of the unfairly priced and subsidized imports. See

Ferrosilicon From Brazil, Kazakhstan, People's Republic of China, Russia, Ukraine, and

Venezuela, 64 Fed. Reg. 51,097, 51,098 (Sept. 21, 1999); see also USITC Pub., at 4.

In accordance with the ITC's action, Commerce "rescinded" the antidumping and

countervailing duty orders covering the subject imports. See Ferrosilicon From Brazil,

Kazakhstan, People's Republic of China, Russia, Ukraine, and Venezuela, 64 Fed. Reg. at

51,098 (explaining that ITC's negative injury determinations on reconsideration had "rendered

[the orders] legally invalid from the date of issuance"). In conjunction with this rescission,

Commerce terminated all related administrative reviews, see id., and instructed Customs to

liquidate all unliquidated entries.[3] See id. at 51,099.

Thereafter, domestic ferrosilicon producers brought individual suits separately

challenging the actions of the ITC and Commerce. The suits against the ITC were consolidated,

as were those against Commerce. The former consolidated action is currently before the Court.[4]

Petitioners have, in the interim, made the instant motions, seeking to enjoin liquidation of the

subject entries.

---

[3]     Excepted from these instructions were all entries of ferrosilicon from Venezuela, which were, and remain, the subject of a previously granted preliminary injunction. See AIMCOR v. United States, 23 CIT __, 83 F. Supp. 2d 1293 (1999).

[4]     The latter action, Consol. Court No. 99-10-00660, is stayed pending resolution of the merits of the case at bar.

The ITC and Defendant-Intervenors, Ferroatlantica de Venezuela ("Ferroven"); General Motors Corporation ("GM"); Associação Brasileira dos Productores de Ferroligas e de Silico Metalico, Companhia Brasileira Carbureto de Calcio-CBCC, Companhia de Ferroligas de Bahia-FERBASA, Nova Era Silicon S/A, Italmagnesio S/A-Industria e Comercio, Rima Industrial S/A, and Companhia Ferroligas Minas Gerais-Minasligas (collectively "ABRAFE, et al."); and Ronly Holdings, Ltd., Cheliubinski Electrometalurgical Works, Kuznetsk Ferroalloy Works, Stakhanov Ferroalloy Works, and Zaporozhye Ferroalloy Works (collectively "Ronly, et al."), oppose these motions, contending that Petitioners have failed to make the requisite showings for the grant of the requested relief.

## DISCUSSION

Injunctive relief is an "extraordinary remedy," to be granted sparingly. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993); PPG Indus., Inc. v. United States, 11 CIT 5, 6 (1987). The movant bears the burden of establishing that: (1) absent the requested relief, it will suffer immediate irreparable harm; (2) there exists in its favor a likelihood of success on the merits; (3) the public interest would be better served by the requested relief; and (4) the balance of the hardships on all parties tips in its favor. S. J. Stile Assocs., Ltd. v. Snyder, 646 F.2d 522, 525 (C.C.P.A. 1981); accord Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983); Bomont Indus. v. United States, 10 CIT 431, 434, 638 F. Supp. 1334, 1337 (1986). The court in its analysis of these factors employs a "sliding scale," see Chilean Nitrate Corp. v. United States, 11 CIT 538, 539 (1987), and, consequently, need not assign to each factor equal weight. See FMC Corp., 3 F.3d at 427 ("If a preliminary injunction is granted by the trial court, the weakness of the showing

regarding one factor may be overborne by the strength of the others. . . . [Conversely], the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify [its] denial."). Notwithstanding, the crucial element is that of irreparable injury. Nat'l Hand Tool Corp. v. United States, 14 CIT 61, 65 (1990); Bomont, 10 CIT at 437, 638 F. Supp. at 1340 ("Failure of an applicant to bear its burden of persuasion on irreparable harm is ground to deny a preliminary injunction, and the court need not conclusively determine the other criteria."); see also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."). The Court, having considered the requisite factors, concludes that Petitioners have not made a clear showing that they are entitled to the requested relief.

**I. Irreparable Harm**

Petitioners advance three grounds for a finding of irreparable harm. First, Petitioners maintain that they have suffered "specific competitive injury and substantial adverse operating results as a result of the Reconsideration Determinations" (Elkem's Mem. Supp. Mot. Prelim. Inj. at 4), and that they will continue to suffer such "grievous, immediate and irreparable economic injury" (Id. at 1) in the absence of injunctive relief. Second, Petitioners, citing AIMCOR v. United States, 23 CIT __, 83 F. Supp. 2d 1293 (1999), contend that "this [c]ourt has already found . . . that [they] would be irreparably harmed if they are deprived of the remedial effects of the antidumping and [countervailing duty] statutes[, that is, if] entries of subject ferrosilicon are liquidated without assessment of antidumping and countervailing duties while this case is pending, yet plaintiffs ultimately prevail on the merits." (Id. at 4.) Third, CC Metals

asserts that the ITC's reconsideration determinations violated the due process guarantees of the Fifth Amendment (CC Metals' Mem. Supp. Mot. Prelim. Inj. at 12), and further claims that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that 'no further showing of irreparable harm is necessary.'" (Id. at 11–12 (citation omitted).) The Court addresses each argument in turn.

### A.  Economic Harm

In support of their first argument, Petitioners have submitted three affidavits and a declaration, together with several exhibits,[5] and, in sum, allege the following: (1) an increase in the volume of ferrosilicon imports since the rescission of the relevant orders (Elkem's Mem. Supp. Mot. Prelim. Inj. at 5; Burrows Aff. ¶ 9); (2) the existence of a "heavy downward pressure on domestic prices" (Elkem's Mem. Supp. Mot. Prelim. Inj. at 6 (citing Burrows Aff. ¶ 11)); (3) an overall drop, from the third quarter of 1999 to the first quarter of 2000, in the average unit value of Plaintiffs' quarterly requirements contracts with steel producers for the sale of 75 percent ferrosilicon, as well as for certain Plaintiffs' quarterly requirements contracts with steel producers for the sale of 50 percent ferrosilicon (Elkem's Mem. Supp. Mot. Prelim. Inj. at 6 n.14;

---

[5]        Globe relies on the arguments set forth in Elkem's Memorandum in Support of Motion for Preliminary Injunction with respect to, inter alia, its burden on the showing of irreparable harm. (Globe's Mem. Supp. Mot. Prelim. Inj. at 1.) However, none of the affidavits submitted by Elkem, or any of the exhibits attached thereto, refer to Globe's ferrosilicon operations, and Globe has failed to submit any independent evidence of the alleged economic harm. See Chilean Nitrate, 11 CIT at 541 (noting, in its conclusion that plaintiff had failed to show likelihood of irreparable harm, the lack of "marketing studies, written financial data or other hard evidence of the serious permanent harm which would result from denial of the injunction"); Tropicana Prods., Inc. v. United States, 3 CIT 171, 176 (observing absence of "facts or figures," which rendered claim of irreparable injury "speculative, at best," and thus insufficient to warrant injunctive relief), amended in part by 3 CIT 240 (1982).

Burrows Aff. ¶ 16); (4) "sales losses" on the part of Elkem (Elkem's Mem. Supp. Mot. Prelim.

Inj. at 8 n.18 (citing Kvernmo Aff. ¶ 13)) and a decline in the volume of CC Metals' and

AIMCOR's sales of 75 percent ferrosilicon to steel producers in the first quarter of 2000, as

compared to the companies' average quarterly volumes in 1999 (Elkem's Mem. Supp. Mot.

Prelim. Inj. at 9 nn.20–21 (citing Burrows Aff. ¶ 18 n.40, ¶ 19 n.42)); and (5) that American

Alloys has been rendered bankrupt as a "direct result" of the ITC's determinations on

reconsideration (Elkem's Mem. Supp. Mot. Prelim. Inj. at 7).  In closing their argument with

respect to economic harm, Petitioners quote from the affidavit of Dr. James C. Burrows:

> In the face of the depressive effect of potential subject imports sold
> at unfair prices, future domestic prices are likely to remain low and
> perhaps weaken further. . . . The plaintiffs will not be able to
> reclaim critically diminished margins on ferrosilicon sold during
> this period of depressed prices.  Lost employment cannot be
> recaptured.  *The injury that plaintiffs are suffering is clearly
> immediate and irreparable.  Only restoration of the suspension of
> liquidation will halt this severe, immediate, and irreparable
> damage to domestic producers.*

(Elkem Mem. Supp. Mot. Prelim. Inj. at 9–10 (quoting Burrows Aff. ¶ 21) (ellipsis and added

emphasis in original).)


        While Petitioners arguably present a claim of past and even present financial losses, as to

the future such statements are speculative and conclusory, and cannot provide the basis for a

finding of irreparable injury.  That the harm is irreparable cannot be determined by surmise.  See

Techsnabexport, Ltd. v. United States, 16 CIT 420, 428, 795 F. Supp. 428, 437 (1992) ("The

court may not grant preliminary relief based upon unsupported allegations. . . . Allegations of

harm to potential future business relations are too speculative to constitute irreparable harm.");

Nat'l Hand Tool, 14 CIT at 66 ("[W]here irreparable injury is not demonstrated by 'probative

evidence' a preliminary injunction should be denied.") (quoting Am. Inst. for Imported Steel, Inc. v. United States, 8 CIT 314, 318, 600 F. Supp. 204, 209 (1984)); Nat'l Corn Growers Ass'n v. Baker, 9 CIT 468, 471 & n.4 (1985). Furthermore, much of Petitioners' evidence is controverted by the ITC and Defendant-Intervenors, and is, in large part, presented by interested parties. See Shree Rama Enters. v. United States, 21 CIT 1165, 1167, 983 F. Supp. 192, 195 (1997) ("[A]ffidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction.").

Even assuming that certain such evidence were probative, i.e., that there exists adequate proof of a surge in the absolute volume of the subject imports; a decline in the domestic price of such goods; a drop in the volume and profitability of certain quarterly domestic sales; and some lost sales, the claimed injury fails to rise to the level of irreparable harm. Economic injury of the kind claimed here is "not necessarily 'irreparable.'" Neenah Foundry Co. v. United States, 24 CIT __, __, 86 F. Supp. 2d 1308, 1313 (2000). Irreparable injury is harm for which there exists no adequate remedy at law. See Heartland By-Prods., Inc. v. United States, 23 CIT __, __, 74 F. Supp. 2d 1324, 1330 (1999); Manufacture de Machines du Haut-Rhin v. von Raab, 6 CIT 60, 64, 569 F. Supp. 877, 881 (1983); see also Stile, 646 F.2d at 525 (referring to irreparable injury standard as one which requires proof of "a viable threat of serious harm which cannot be undone"). As Petitioners, by this action, are pursuing a remedy for the financial injury of which they complain (that is, the reimposition of antidumping and countervailing duties), their allegations of irreparable harm are severely undermined. See Sampson v. Murray, 415 U.S. 61, 90 (1974). Moreover, this court has in several prior opinions declined to find irreparable injury on the basis of financial losses similar to those alleged herein. See, e.g., Neenah, 24 CIT at __,

86 F. Supp. 2d at 1313; Timken Co. v. United States, 11 CIT 504, 507–08, 666 F. Supp. 1558, 1560–61 (1987) (finding that evidence of "dramatic increase" in volume of imports, lower prices, lost sales, "several million dollars in lost revenue," and first quarter losses which surpassed annual operating profits, even if "documented and uncontroverted," failed to establish irreparable harm); Bomont, 10 CIT at 436, 638 F. Supp. at 1339 (finding that evidence of competitive difficulties, decline in sales, and net losses "fail[ed] to support the thesis that lack of suspension of liquidation during the pendency of th[e] action, in the hope of ultimate administrative imposition of any antidumping duty, w[ould] cause the plaintiff irreparable injury"); see also Nat'l Hand Tool, 14 CIT at 66 (stating that evidence showed merely "the usual harm of a competitive market," and was thus insufficient to constitute irreparable harm). Petitioners, in essence, invite the Court to find that the evidence proffered demonstrates past and present economic injury, and to transform such a finding into a prediction of irreparable harm. This feat of judicial legerdemain the Court cannot perform. See, e.g., Neenah, 24 CIT at __, 86 F. Supp. 2d at 1311–13 (finding that unrefuted testimony, and an affidavit asserting possible future decline in prices of subject imports, "drastic" price disparity, offers of sales of subject merchandise at prices below domestic producers' costs of production, loss of "significant sales," anticipated "greater losses" in revenue and profits, and underutilized capacity to produce the subject merchandise in the exporting country, did not constitute irreparable injury).

As to American Alloys' bankruptcy, the Court is not persuaded that its Chapter 11 filing was a "direct result" of the ITC's actions. Petitioners, citing to the affidavit of Mr. Michael J. Farrell, a director of American Alloys, claim that "U.S. prices fell . . . and the company could not continue to operate its 75 percent commodity-grade ferrosilicon furnace." (Elkem's Mem. Supp.

Mot. Prelim. Inj. at 7; Farrell Aff. ¶ 13.)  Petitioners further state that American Alloys shut

down this furnace in October 1999, and, "after considering the likely future price trend and its

future cash flow" (Elkem's Mem. Supp. Mot. Prelim. Inj. at 7 (citing Farrell Aff. ¶ 15)), filed for

bankruptcy on January 26, 2000.  However, as acknowledged by CC Metals, "the market's

downward pricing trend . . . began in early 1999 as a result of a decline in world-wide steel

production."  (CC Metals' Mem. Supp. Mot. Prelim. Inj. at 10.)  Petitioners further report that

"demand softened due to declines in U.S. iron and steel production and the displacement of some

ferrosilicon consumption by substitute products such as silicon carbide and silicomanganese"

(Elkem's Ex. 1, at 7 n.24), and that such declines began in early 1997 and continued into 1998.

(Id., at 6 n.24.)  Moreover, Petitioners concede that operating income had begun to fall in 1997

and 1998, also as a result of the weakened demand and price pressure caused by substitute

products and the decline in iron and steel production (Elkem's Ex. 1, at 7–8), and that the

"closure of American Alloys . . . was caused by the[se] earlier price declines."  (Burrows Aff. ¶

14.)  Indeed, Mr. Farrell says that "[t]he large influx of Chinese silicon carbide imports caused

U.S. ferrosilicon prices to begin to deteriorate. . . .  The [average unit value] of American Alloys'

ferrosilicon sales eroded . . . and [its] operating income slipped."  (Farrell Aff. ¶ 8.)

Consequently, Petitioners fail to establish that American Alloys' Chapter 11 status is the result of

competition from the subject imports liquidated without the assessment of duties.  See Armco,

Inc. v. United States, 6 CIT 111, 116, 570 F. Supp. 51, 56 (1983) (noting, in its negative

conclusion with respect to irreparable harm, plaintiffs' failure to "establish a nexus between the

lost sales and the failure to impose dumping duties"); Timken, 11 CIT at 508, 666 F. Supp. at

1561.  Nor have Petitioners explained how irreparable harm would result from a denial of the

requested relief.  See Bomont, 10 CIT at 436, 638 F. Supp. at 1338 (noting plaintiff's failure to

establish how permitting subject imports to enter U.S. market "without the possibility of offsetting dumping duties will prevent [it] from recovering profitability, prolong its period of losses, deprive it of working capital, and threaten its very existence"). Petitioners merely claim that, "[i]f antidumping and [countervailing duty] relief is restored and market prices improve, American Alloys may be able to restart production, bring back its laid-off workers and emerge from the Chapter 11 proceedings as a viable company." (Elkem's Mem. Supp. Mot. Prelim. Inj. at 7 n.17 (citing Farrell Aff. ¶ 17).) Such a proposition is clearly too speculative to serve as the basis for a preliminary injunction. Thus, the Court must reject Petitioners' first argument.

### B. Issue Preclusion

In their second argument, Petitioners allege that the ITC and Defendant-Intervenors, as a result of the decision in AIMCOR, 23 CIT at __, 83 F. Supp. 2d at 1293, are precluded from litigating the issue of irreparable harm. The Court rejects this contention. A party is collaterally estopped from litigating an issue only if: (1) the issue presented is identical to one adjudicated in a prior case; (2) the issue was raised and "actually litigated" in that prior case; (3) the previous determination of that issue was "necessary" to the judgment rendered in the prior case; and (4) the party precluded was "fully represented" in the prior action. Thomas v. Gen. Servs. Admin., 794 F.2d 661, 664 (Fed. Cir. 1986); Am. Permac, Inc. v. United States, 16 CIT 672, 674, 800 F. Supp. 952, 954 (1992), aff'd, 996 F.2d 1236 (Fed. Cir. 1993) (unpublished table decision); see also Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1570–72 (Fed. Cir. 1983) (defining each requirement).

The court in AIMCOR, however, made no determination with respect to irreparable injury, as this issue was not before it. The court's conclusions in AIMCOR pertained to a motion for dissolution of the still existing preliminary injunction which enjoins the liquidation of entries of ferrosilicon from Venezuela. The domestic producers in AIMCOR, as the non-movants, did not, therefore, bear the burden of justifying maintenance of the injunction, i.e., they were not required to establish the existence of a threat of immediate irreparable harm, in order to prevent its dissolution. See AIMCOR, 23 CIT at __, 83 F. Supp. 2d at 1299. Consequently, the issues presented here neither are identical to those presented in AIMCOR nor were they "actually litigated" by the parties therein. See Cordis Corp. v. Medtronic, Inc., 835 F.2d 859, 863 (Fed. Cir. 1987) ("If an issue was not litigated in a prior suit, obviously the doctrine of 'issue preclusion' cannot apply."); Mother's Rest., Inc., 723 F.2d at 1570; see also Am. Permac, 16 CIT at 676 n.7, 800 F. Supp. at 956 n.7 (explaining that third requirement, that is, that previous determination of issue to be precluded was "necessary" to judgment rendered in prior case, cannot be met where prior court "merely decide[d] that issue collaterally or in dicta"). Equally clear is that Defendant-Intervenors were not fully represented in AIMCOR. Ferroven, the sole movant in AIMCOR and the sole producer of ferrosilicon from Venezuela, is the only defendant-intervenor herein (that is, of those who produce ferrosilicon) whose merchandise is currently enjoined from liquidation, and thus cannot be said to be the "virtual representative" of the other defendant-intervenors. See Mother's Rest., Inc., 732 F.2d at 1572. The ITC and Defendant-Intervenors, therefore, are not as a matter of law estopped from litigating the issue of irreparable harm. Thus, Petitioners' second theory fails to establish a showing of irreparable harm.

###### C. Alleged Deprivation of Constitutional Due Process

Petitioners' final assertion, which is set out but briefly in CC Metals' supporting memorandum, is that Petitioners have made a sufficient showing of irreparable harm merely by alleging a deprivation of a constitutional right. (CC Metals' Mem. Supp. Mot. Prelim. Inj. at 11–12.) However, as noted by the ITC (Def.'s Mem. Opp'n to Mot. Prelim. Inj. at 8),:

> [c]ases so holding . . . are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance to be irremediable by any subsequent relief. . . . The alleged denial of procedural due process, without more, does not automatically trigger such a finding.

Pub. Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 382 (1st Cir. 1987); see also Wagner v. Taylor, 836 F.2d 566, 577 n.76 (D.C. Cir. 1987) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, . . . the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant.") (quoting Del. & Hudson Ry. v. United Transp. Union, 450 F.2d 603, 619 (D.C. Cir.), cert. denied, 403 U.S. 911 (1971)); Ashland Oil, Inc. v. FTC, 409 F. Supp. 297, 307 (D.D.C.) ("[T]he required showing of irreparable injury is not eliminated simply by virtue of a claim alleging violation of statutory or constitutional rights."), aff'd, 548 F.2d 977 (D.C. Cir. 1976). As previously noted, CC Metals merely alleges that the ITC violated the due process guarantees of the Fifth Amendment. Consequently, CC Metals' allegation, without more, fails to trigger an automatic finding of irreparable harm.[6]

---

[6] A violation of an identifiable constitutional right may constitute irreparable injury. See Techsnabexport, 16 CIT at 426, 795 F. Supp. at 435; see also Am. Ass'n of Exporters and Importers-Textile and Apparel Group v. United States, 751 F.2d 1239, 1250 (Fed. Cir. 1985) ("Those seeking constitutional protection under the due process clause must point to a 'legitimate

Thus, the Court concludes that Petitioners have failed to make a showing sufficient to carry their burden with respect to the crucial element of irreparable injury. Mindful, however, of the sliding scale analysis, the Court considers the remaining factors.

## II. Likelihood of Success on the Merits

"The failure . . . to establish irreparable harm significantly raises the burden imposed on [p]laintiff to prove a likelihood of success on the merits." Shandong Huarong Gen. Group Corp. v. United States, 24 CIT __, __, 122 F. Supp. 2d 143, 148 (2000). Put differently, a movant who fails to establish that the hardships weigh in its favor, i.e., that it is in danger of immediate irreparable harm, cannot satisfy its showing as to a likelihood of success on the merits by merely "rais[ing] questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Am. Air Parcel Forwarding Co. v. United States, 1 CIT 293, 298, 515 F. Supp. 47, 52 (1981) (quoting Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)); see also Ugine-Savoie Imphy v. United States, 24 CIT __, __, 121 F. Supp. 2d 684, 690 (2000). Plaintiffs' complaints do, in fact, raise serious issues, including whether and in what manner the ITC may reconsider final material injury determinations, and whether the ITC's findings on reconsideration are valid. Nonetheless, "[t]his is not a case where a decision in

---

claim of entitlement' prior to any consideration of the Government's constitutional obligations."). However, CC Metals' constitutional due process claims, to the extent they can be determined, are based on facts and arguments not yet fully developed and thus cannot be decided at this phase. Indeed, the "test is one of fundamental fairness in light of the total circumstances," see Techsnabexport, 16 CIT at 428, 795 F. Supp. at 436 (quoting Barnhart v. United States Treas. Dep't, 7 CIT 295, 303, 588 F. Supp. 1432, 1438 (1984)), and the Court is not at this point in the litigation prepared to conclude that the due process afforded Petitioners was constitutionally unsound.

plaintiff[s'] favor on the merits can be predicted." Chilean Nitrate, 11 CIT at 540. Thus, given

the absence of a showing of irreparable injury, it would be "inappropriate to resolve [these

questions] . . . according to a likelihood of success on the merits standard." Techsnabexport, 16

CIT at 429, 795 F. Supp. at 437; see also Bomont, 10 CIT at 437, 638 F. Supp. at 1340 ("[T]he

court is not persuaded now that the plaintiff is so likely to succeed on the merits as to make the

showing of irreparable harm a conceptual formality.").


## III.  The Public Interest

Here, the public interest lies in "the fair and efficient operation of the antidumping laws,

and this factor is in lock step with the merits." Chilean Nitrate, 11 CIT at 540; see also Neenah,

24 CIT at __, 86 F. Supp. 2d at 1317 (stating that public interest is invariably best served by

"ensuring that Commerce and the ITC comply with the law, and that they interpret and apply

laws and regulations correctly"). While it is well settled that "the purpose of the antidumping

and countervailing duty scheme is to 'equalize competitive conditions' between exporters and a

domestic industry," Chr. Bjelland Seafoods A/S v. United States, 16 CIT 945, 953 (1992) (citing

Nat'l Knitwear & Sportswear Ass'n v. United States, 15 CIT 548, 558, 779 F. Supp. 1364, 1372

(1991)), it is impossible to determine whether the relief requested would effect this public policy,

i.e., whether the non-assessment of duties would in fact "level the playing field." In addition, the

potential consumer harm associated with the suspension of liquidation is a substantial concern

that must be taken into account in this inquiry. Cf. Am. Hosp. Supply Corp. v. Hosp. Prods.,

Ltd., 780 F.2d 589, 601 (7th Cir. 1986) (noting the possible harm to non-parties, "the ultimate

purchasers"). Consequently, as the issues to be litigated are "extremely complicated and of great

importance to all of the parties, sovereign and otherwise," Techsnabexport, 16 CIT at 429, 795 F.

Supp. at 437, the Court concludes that the public interest would be better served by maintenance of the status quo pending a conclusive resolution of the merits. See Nat'l Hand Tool, 14 CIT at 66; Associated Dry Goods Corp. v. United States, 1 CIT 306, 311, 515 F. Supp. 775, 780 (1981).

## IV.  Balance of the Hardships

With respect to the relative hardships on the parties, the economic hardship that may be borne by Petitioners as a result of price competition, in the absence of the requested relief, is balanced by the hardship that may be borne by Defendant-Intervenors as a result of the price uncertainty caused by a stay of liquidation. Cf. Timken, 11 CIT at 509, 666 F. Supp. at 1561 (noting, in its discussion of balance of hardships, the "uncertainty to the importers and independent businesses as to the ultimate price of the goods" that would result from grant of injunction against termination of suspension of liquidation, i.e., the continued suspension of liquidation); see also Algoma Steel Corp. v. United States, 12 CIT 802, 806, 696 F. Supp. 656, 660 (1988) (discussing congressional "concern regarding the 'commercial uncertainty related to the suspension of liquidation,'" as expressed in legislative history of Trade Agreements Act of 1979). The hardships do not, therefore, favor Petitioners. See Techsnabexport, 16 CIT at 429, 795 F. Supp. at 437 ("As plaintiffs have the burden on this issue, the hardships are presumed to balance.").

## CONCLUSION

Thus, for all of the foregoing reasons, the Court finds that Petitioners have failed to meet their burden with respect to each of the four prongs of the test for preliminary injunctive

relief.  Accordingly, Petitioners' motions for preliminary injunctions are denied.

_____
Richard K. Eaton, Judge

Dated:  March 15, 2001
       New York, New York